All right, here we go. May it please the court, Mr. Larmore's former attorney offered a legal opinion as to the ultimate issue before the jury, testifying about the legal advice that he gave Mr. Larmore. That was indefensible and tragic, but it was also the foreseeable consequence of the district court's decision to permit the defendant's former attorneys to testify against him in his own criminal trial about the legal advice they provided to him in connection with the charge scheme. The testimony was admitted by the district court over the defendant's motion and objection without any meaningful guardrails at all, and it's no wonder that the end result was a trial tainted by inflammatory, problematic testimony. You're making a 403 argument, right? I am, Your Honor. Without saying 403 for some reason? I am, Your Honor. Okay. And there was no 403 objection made, right? Not at the time of trial, Your Honor. I mean, in other words, there was a decision that, or there was, excuse me, pre-trial briefing on this. On the attorney-client on privilege issues, right? And you're not appealing privilege ruling, as I understand it, correct? That's right, I'm not, Your Honor. And so instead saying, okay, we don't object to the waiver, but there should have been a policing. And you could imagine, I could imagine a colloquy of, all right, there's waiver, but counsel says, but you know what, there's going to be a line to guard here between what comes in with respect to intent and what might tip over. And so a classic motion to eliminate practice, and maybe there's some specific examples in the district court, judge gives guidance and says, this is okay or this is not, and maybe says, well, some things might be too close to call, so we'll see, raise the objections with this guidance in mind. And there's none of that. I agree, Your Honor, that this case was not tried in the manner. Yeah. And instead, there's limited instruction, which kind of goes exactly to this point. Judge Engelmeyer is very careful with that, which says it goes to, you know, it goes to intent, but my instructions as to what the law are are what controls. Your Honor, I don't. So what's the, in light of all of that, you want us to say it's plain error? No, I think it's an abuse of discretion, Your Honor. I don't think that this is plain error. But look, Judge Engelmeyer accepts your objection and gives instructions. If you think that that instruction was not enough, well, it is hard to say to a judge in normal cases, you haven't done it right, and because of that, there's a very important opinion by Judge Newman that says that the test at that point is not the plain error test. It's a series of factors to decide. But in those cases, different from this one, the judge does not invite a further objection. Here, Judge Engelmeyer, after making his corrective instruction, asks you, do you want more? And you say no. Now that's a very different case. That makes this the most dramatically plain error, because this is just asking for sandbagging. You know? It's a case whereby not objecting, you keep an objection that now you're making and saying, how horrible, which is just an invitation, which is why we have plain error. And to be clear, Judge Calabresi, I was not trial counsel. No, no, I understand. And I'm not even ever saying that. Well, keep count. That's the second time you've said it. By the way, when I say sandbagging, I never say that is sandbagging necessarily in the particular case. The point about sandbagging is that we read plain error as we do in order not to invite sandbagging in other cases, even if there was no such intention here. Well, Your Honor, I mean, I think the argument that I would be making regarding preservation, to go to both of Your Honor's points, is if you look at 192 to 94 of the appendix, there was a challenge to the motion in which the defense said that government has no basis to demand production of communications with attorneys, whether or not privileged. And so they were objecting to the testimony in its whole. Now, obviously, was their practice below perhaps what I would have done? No. And it may be why this Court may eventually see this on a 2255. But the question for preservation, I think particularly if Yu Long is the case I would be relying on, which is that the issue is fairly, the issue of whether or not their testimony should have been admitted at all was before the district court. And, you know, that's the type of issue that could have been decided pre-trial. And everything else flowed from that. And so for purposes of preservation, that's why I'm saying it's abuse of discretion. And the district court did contemplate and did admit testimony. It wasn't a surprise to the district court that he, that the attorney Siegel was going to testify as to his legal opinion to the defendant regarding the legality of this scheme. And that was not relevant. It wasn't just four or three. It really was not relevant. It's not admissible. And you shouldn't, a criminal defense attorney should not be testifying essentially as experts on the law in a criminal trial. And so my argument before Your Honors would be that that testimony should never have been admitted in the first place. Wait, the statement, I don't think you can do that? Yeah, with Siegel's testimony? I mean, that doesn't go to, you're saying that's not proper state of mind evidence? It's really a lawyer rendering a legal opinion. And I think the jury would perceive it as such. He testified that he was licensed to practice law. He testified that- You're talking about Siegel? Siegel, that's right. And which specific testimony? He testified, he essentially, he testified that this scheme was presented to him. And he said, I don't think you can do that. And he was rendering a legal opinion. I first understood you were saying that that was a 403 problem. But then I thought you now seem to be saying it was just not admissible. I think it's both. I think it's not admissible. It's not admissible. A legal opinion is not admissible in a criminal case on the ultimate issue. And that would be under Marx and Company. Even if it goes to intent rather than to validity of a legal opinion. That is so dramatic that we should have a rule that says absolutely not. And you can't cure it because you just cannot have a lawyer come in. I think that is- That's a pretty dramatic statement. I mean, what, do we have any cases that have done that? I would be relying on Marx and Company versus Steiner's Club, 552nd at 505 on that point, which in which the court was really talking about how in securities cases in particular, these issues are acute. Because the jury doesn't understand these issues and would potentially be relying very heavily on an attorney's testimony. Thank you. Thank you. Were you the trial counsel below? I probably was, Your Honor. Yes. Good morning, and may it please the court. My name is Justin Rodriguez, and I represent the United States on this appeal, as I did at trial before Judge Engelmeyer. Mr. Larmore waived all four of his arguments on appeal. But even so, Judge Engelmeyer did not commit any error, let alone plain error. His approach to the testimony and evidence at issue was very thorough and careful. It involved robust limiting instructions. And under the deferential standards of review that apply, it was far from arbitrary and irrational such that it would be an abuse of discretion. Finally, even if the court found some error here and there was absolutely none, such error would be entirely harmless. That's because Judge Engelmeyer found, and I don't think this finding has been challenged at all, that the evidence at trial of Mr. Larmore's guilt was, quote, overwhelming. It included, quote, overwhelming evidence of intent to defraud and to deceive. That's at District Court docket 140 at page 4. With respect to Judge Calabresi's question that was posed to Mr. Larmore, I would submit that this was not simply a case of no objection. This was a case of Mr. Larmore himself affirmatively trying to use the privilege as both a sword and a shield, which is classically impermissible. It was Mr. Larmore who filed a motion in limine seeking to admit communications that he had with lawyers as somehow evidence of good faith. He wanted to put before the jury, look, I was acting in good faith because I asked lawyers certain questions and they gave me certain information. The analogy we drew at trial was what Mr. Larmore is trying to do here is akin to the situation where I see my five-year-old daughter going to the freezer to get ice cream before dinner and she says, no, no, it's OK. I asked my mom. But what she didn't say is that her mom told her no. Mr. Larmore wanted to hide from the jury that these attorneys, after hearing his plan, said, you can't do that. And the government offered that evidence, not for its truth, but to counter this argument that Mr. Larmore's intent was that of somebody acting in good faith. But at the moment, the question is posed, what did you tell him? I said, I don't think you can do that. Yes. The follow-on question, why did you tell him that, eliciting, because this is classic stock manipulation and securities fraud, is not state-of-mind evidence. I agree, Your Honor, and it was appropriately struck. Let me just give a touch of context, since I was the trial counsel. And I was the examiner during this question. In pre-trial interviews with the government, Mr. Siegel actually said that he did communicate to Mr. Larmore, not only you can't do this, but that it's unlawful and classically unso. And that's what I was attempting to elicit. Not that this was just his opinion, but that this was additional information. A slightly broader question. Can there be some witnesses who, by nature of who they are, just simply cannot be brought in? Me, crazy example. Bring in a judge to say, oh yes, we always decide against. You know? Could that be just wrong, so that the very allowance of that is reversible error, regardless of any curative? I think that's the nature of what they're saying. It's kind of hard to apply in this situation for the reasons you've said. But I'm curious about the argument itself, that there may be some type of witness where, no, the President of the United States, or something that is just so dramatic that the answer is no. Judge, I struggle to think of an example, but they very well may be. But here's the important point. District courts have the tools that they need to answer that question. And the tool is Rule 403. It's a balancing test. You balance the probative nature of the testimony against whether there is a substantial risk that it's going to be outweighed by unfair prejudice. And in this case, like judges do in this courthouse every day, Judge Engelmeyer engaged in a 403 balancing test. And what's important here, I come back to you, is this was not the government's idea. It was Mr. Larmore who wanted to put these attorneys and his interactions with them before the jury. But he only wanted to tell half the story. And so the cases that my friend on the other side cites don't involve circumstances of a defendant himself or herself trying to put before the jury a one-sided story of interactions with attorneys. They involve instances of expert testimony in which the testimony is being offered for its truth, which was not the case here. I think that was the Marks case that my friend just cited. They involve instances of the advocate witness rule. And they involve some cases in which judges have expressed distaste but not found any reversible error. The other item that I wanted to address, Your Honors, is after striking what the government agrees was impermissible testimony, Judge Engelmeyer engaged in this very careful, very thoughtful exercise in which not only did he immediately and forcefully tell the jury to ignore that testimony. And of course, this court presumes that juries follow their instructions. And their juries are instructed to ignore testimony that they've just heard all the time. But he gave a very clear limiting instruction that reinforced that the jury was to get its legal instructions only from him. But he didn't stop there. What he did was he took a break, and he put it to Mr. Larmore's counsel to see if there was anything else that needed to be done. And Mr. Larmore didn't just not raise an objection. This is, I think, the key part of the transcript on page 538. Judge Engelmeyer explains to him. He says, quote, I think I've cured the problem. Mr. Larmore's counsel then responds, quote, I think you have too, Judge. What is Judge Engelmeyer supposed to do when Mr. Larmore's counsel has agreed on the record that the problem has been cured? Surely, if he thought that the problem had not been cured, he had an obvious course of action. And that was, Judge, I move for a mistrial. There's no instruction. There's nothing you can do to unring that bell and to mitigate the prejudice. Mr. Larmore's counsel did not do that here. He did not move for a mistrial or seek any further relief beyond striking the testimony that Judge Engelmeyer had already done. This is a quintessential waiver. He made a tactical decision. The tactical decision was, I'd rather take my chances with this jury, having had the testimony struck, having had them get the limiting instruction, rather than start over again with another jury. This is a clear instance of a deliberate strategic choice that was made after Judge Engelmeyer gave the parties a break, after he gave the parties an opportunity to think about it, after he gave Mr. Larmore and his counsel an opportunity to discuss it. So, Your Honor, this is a Rule 403 case. The deferential standards of review apply. It's a waiver case. Even if it wasn't, it would be a plain error case. Even if it wasn't, it would be a harmlessness analysis that needs to be done. And so I will conclude, unless the Court has any further questions, sort of where I started, which is this unchallenged finding by Judge Engelmeyer that the trial evidence included, quote, overwhelming evidence, overwhelming evidence of intent to defraud and to deceive, unless the Court has any further questions. Thank you. We'll hear from Bob. Thank you, Your Honor. Just a few brief points. One, there was a discussion of how thorough and robust the process was below in the district court's reasoning. The description here regarding what was thorough was after some testimony came out that was perhaps unanticipated and stricken. But look at the how, I think, a lack of thorough and robust process regarding the statements that were going to be coming in in the first place. Ultimately, what the questions, there was a replaying here of what the questions and answers were. And there was essentially, you had a prosecution claiming there's overwhelming evidence, but yet eliciting evidence from the defendant's own attorney about his opinions regarding the ultimate legal matter at issue and what he told the defendant about that. That should not have been admitted. That was not admissible evidence and should have been excluded. There was a discussion of harmlessness a moment ago. I will just note, despite this discussion of overwhelming evidence, in closing argument, counsel was focusing very heavily on these statements. And in fact, really coming up to the line at one point and essentially evoking the testimony that was stricken. And so if there was such overwhelming evidence, I don't understand why there was such a focus on this testimony, which, of course, a jury would take seriously. Some of the cases I cited were distinguished because there was an argument that, well, those were related to expert testimony. But to a jury, a lawyer is going to be an expert on the law. And someone saying, I'm a licensed in the state of New York to practice law, here is my legal opinion and here's the legal opinion that I gave the defendant, that is, of course, going to be the jury's focus. Regarding waiver, there was a discussion that there was a deliberate strategic choice here. And I would suggest a mischaracterization of the record. I mean, certainly the defense made the regrettable choice to waive privilege in trying to enter those text messages. And I don't contest the waiver of privilege there. But ultimately, at the end of the day, they did object to the admission of that testimony. And at trial, they didn't actually focus on those communications. Ultimately, there was a bulldozer driven through that choice that was made to waive, that ultimately resulted in the waiver of privilege, to introduce wholesale testimony by these attorneys that was inadmissible and highly prejudicial. For those reasons, we would ask for redressal. Thank you. Thank you both. And we'll take the matter under advisement.